# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM EASTMAN, an individual, and PATRICIA EASTMAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ALLSTATE INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 50, inclusive,<br><br>Defendant. | CASE NO. 14cv0703-WQH-NLS<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss filed by Defendant Allstate Insurance Company. (ECF No. 5).

## I. Background

On or about January 9, 2013, Plaintiffs William and Patricia Eastman commenced this action by filing a Complaint in the Superior Court of the State of California for the County of San Diego. (ECF No. 1 at 2). On March 20, 2014, Plaintiffs filed a First Amended Complaint ("FAC"), which is the operative pleading. (ECF No. 1-2, Ex. B). On March 27, 2014, Defendant Allstate Insurance Company removed this action to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1446 on the basis of diversity of citizenship. (ECF No. 1). On April 14, 2014, Defendant filed the Motion to Dismiss Plaintiffs' Third, Fourth, Fifth, Sixth, and Eighth Claims ("Motion to Dismiss"). (ECF No. 5). On April 28, 2014, Plaintiff's filed an opposition. (ECF

No. 8). On May 5, 2014, Defendant filed a reply. (ECF No. 9).

**II. Allegations of the FAC**

In or around May 19, 2009, Plaintiffs purchased an "Allstate Insurance Company Deluxe Plus Homeowners Policy" (the "Policy"). (ECF No. 1-2 at 87-88). The Policy insured Plaintiffs' property located at 3046 Colley Lane, Escondido, CA 92025-7740 (the "Property"), which "is an approximate 3700 square foot residential home consisting of a very unique and architecturally interesting dome structure." *Id.* at 88. Plaintiffs paid a premium totaling $818.00 for the 2009-2010 Policy.

"On or about August 30, 2009, a fire erupted in or around the back deck of the subject property. On a very hot day in Escondido, the fire quickly spread and engulfed the master bedroom and other areas causing extensive damage inside and outside the home." *Id.* "The home was deemed uninhabitable. The Fire Marshall forbade the Plaintiffs from going anywhere past the kitchen as the floor was compromised." *Id.* "On Sunday, August 30, 2009, the same day as the fire, Plaintiff Patricia Eastman reported the fire to Allstate." *Id.*

"Since the date the loss was reported, Allstate has caused significant delays in handling and resolution of Plaintiffs' claim and had generally mishandled the claim." *Id.* Defendant "failed to immediately assign an experienced adjuster.... delayed in acknowledging, recognizing, or classifying Plaintiffs' loss as a major claim or major loss ... failed to timely send a representative immediately after the fire to view the loss ... [and] sent, hired, and/or retained vendors, consultants, contractors and/or engineers for the subject property that were not qualified and/or able to handle the claim." *Id.* at 89.

"Plaintiffs are informed and believe and thereon allege that the Defendants failed to conduct a prompt, full and complete investigation of the facts and circumstances giving rise to Plaintiffs' claims." *Id.* at 90. "Defendants failed in their duties and obligations by ... [u]sing improper standards to deny Plaintiffs' claims.... [e]ngaging in improper claims handling ... [and] [a]voiding payment of Plaintiffs' claim by accepting

an incorrect version of facts or circumstances or contract interpretation that supported a basis to deny or improperly limit coverage under the Policy...." *Id.*

Initially, Defendant "grossly undervalued" the loss, "claiming the full cost of repair was $200,105.44," but later valued the loss at $373,619.80. *Id.* Plaintiffs' contractor calculated the loss to be $618,900.00, "far in excess of Allstate's estimate." *Id.* at 91. Pursuant to the Policy, "[t]he parties stipulated to a neutral appraiser and each party chose an appraiser to represent their positions." *Id.* Ten days prior to the set appraisal date, "Allstate unilaterally cancelled the appraisal and refused to further participate, in all direct violation of the terms of the policy and in further bad faith." *Id.* at 91. "Ultimately, the parties entered into a Stipulation for the Appointment of a Neutral General Contractor to Determine Binding Cost of Repair of the Eastmans' Fire Loss Damages, Claim Number 0146921937." *Id.* at 91. On September 13, 2013, the neutral expert provided a report stating that the total cost was $718,613.25.

"Prior to December 2013, Allstate only tendered to Plaintiffs the sum of $348,888.38 for replacement cost; grossly under the actual amounts due to Plaintiffs under the Policy." *Id.* at 89. On December 2013, Defendant tendered an additional $191,147.88. Defendant also paid Plaintiffs' storage fees of $1,000.00 per month "for a time, and then without notice, ceased payment." *Id.* at 92.

Plaintiffs assert the following claims for relief: (1) breach of contract for breach of the Policy; (2) breach of the covenant of good faith and fair dealing related to the Policy ("bad faith breach of Policy"); (3) injunctive relief and restitution pursuant to California Business & Professions Code § 17200, *et seq.* (the "UCL"); (4) declaratory relief; (5) intentional infliction of emotional distress ("IIED"); (6) negligent infliction of emotional distress ("NIED"); (7) breach of contract for breaching the Appointment of a Neutral General Contractor to Determine Binding Cost of Repair of the Eastmans' Fire Loss Damages (the "Stipulation"); and (8) breach of the covenant of good faith and fair dealing related to the Stipulation ("bad faith breach of Stipulation"). Plaintiffs request economic and non-economic damages, breach of contract damages, general

damages and compensatory damages, attorney fees, prejudgment interest, punitive damages, a permanent injunction enjoining Defendants from engaging in "unlawful practices, policies, usages and customs," restitution, and costs of suit. *Id.* at 102.

### III. Discussion

Defendant moves to dismiss Plaintiff's Third, Fourth, Fifth, Sixth, and Eighth Claims for injunctive relief and restitution pursuant to the UCL, declaratory relief, IIED, NIED, and bad faith breach of the Stipulation, respectively.

#### A. 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pac. Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

#### B. Injunctive Relief and Restitution pursuant to the UCL (Third Claim)

1    Defendant contends that Plaintiffs may not pursue the equitable remedies of
2 injunctive relief and restitution because they have adequate remedies at law in contract
3 and tort damages. As to injunctive relief, Defendant contends that Plaintiffs' request
4 for an injunction is moot because the conduct complained of has already occurred.
5 Defendant also contends that a future breach of contract cannot be enjoined under
6 California law and would be difficult to enforce. As to restitution, Defendant contends
7 that Plaintiffs really seek damages for a denial of coverage and cannot recast their claim
8 as one for restitution in order to benefit from the UCL's protections. Defendant asserts
9 that Plaintiffs do not specify what they seek restitution for.

10   Plaintiffs contend that they may seek both UCL remedies and damages because
11 UCL remedies are cumulative. (ECF No. 8 at 8) (citing Cal. Bus. & Prof. Code §
12 17205). Plaintiffs contend that they may be entitled to an injunction because the
13 injury—Defendant's continued refusal to pay Plaintiffs "all monies due under the
14 policy—is ongoing." *Id.* at 9. Plaintiffs also contend that the UCL specifically permits
15 injunctive relief to be awarded to "a person who has suffered injury in fact and has lost
16 money or property as a result of the unfair competition." *Id.* at 11 (citing Cal. Bus. &
17 Prof. Code § 17203). Finally, Plaintiffs contend that they may be entitled to restitution
18 under the UCL for a return of the premiums paid to Defendant as an alternative to
19 damages because "Plaintiffs here may elect which theories they wish to pursue, but
20 need not do so at this juncture." *Id.* at 10.

21   California Business & Professions Code section 17203 provides that:

> [a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

27 Cal. Bus. & Prof. Code § 17203. Section 17205 provides that "[u]nless otherwise
28 expressly provided, the remedies or penalties provided by this chapter are cumulative

1  to each other and to the remedies or penalties available under all other laws of this
2  state." Cal. Bus. & Prof. Code § 17205.

### i. Injunctive Relief

"Although the Unfair Competition Law imposes liability for past acts, in order to grant injunctive relief under section 17204 or section 17535, there must be a threat that the wrongful conduct will continue." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 702 (2006). "Injunctive relief will be denied if, at the time of the order or judgment, there is no reasonable probability that the past acts complained of will recur, i.e., where the defendant voluntarily discontinues the wrongful conduct." *Cal. Serv. Station etc. Ass'n v. Union Oil Co.*, 232 Cal. App. 3d 44, 57 (1991).

In this case, Plaintiffs allege that they "will continue to be denied coverage due to the unlawful claims practices of the Defendants." (ECF 1-2 at 97). "Plaintiffs seek injunctive relief prohibiting Defendants from denying benefits to insureds with covered claims solely based on an overbroad and unfairly drafted policy exclusions and/or prohibiting Defendants from denying benefits to insureds with covered claims solely based on unfair and unjust claims handling in unreasonable interpretation of policy exclusions." *Id.* To the extent Plaintiffs seek an injunction prohibiting Defendant from continuing to deny Plaintiffs coverage under the Policy, Plaintiffs' claim is one for specific performance of the Policy, namely, that Defendants be ordered to cover the full cost of repair. The UCL does not provide for a specific performance remedy. *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 179 (1999) ("Prevailing plaintiffs are generally limited to injunctive relief and restitution."). In addition, the FAC alleges no facts demonstrating that there is a "reasonable probability that the past acts [of denial of coverage] will recur" in the future, even if the present dispute may be a continuing one. *Cal. Serv. Station etc. Ass'n*, 232 Cal. App. 3d at 57.

To the extent Plaintiffs seek an injunction to "protect California residents similarly situated as Plaintiffs from the ongoing wrongful conduct of Defendants," Plaintiffs do not allege any facts demonstrating a general practice of Defendants that

is likely to recur among other persons insured by Defendant and similarly situated to Plaintiffs. The FAC alleges that Defendant is liable for "[a]voiding payment of Plaintiffs' claim by accepting an incorrect version of facts or circumstances or contract interpretation that supported a basis to deny or improperly limit coverage under the Policy." (ECF No. 1-2 at 90). On these alleged facts, an injunction would require the Court to police Defendant's handling of claims pursuant to its Deluxe Plus Homeowners Policies on a case-by-case basis. *See Natural Resources Def. Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292, 1300 (9th Cir. 1992) (holding that an injunction prohibiting the U.S. Environmental Protection Agency from granting further extensions to statutory deadlines of the Water Quality Act of 1987 for permit applications from municipal and industrial dischargers would be inappropriate given the "active management" it would require, while holding that the plaintiff was entitled to declaratory relief that such extensions were unlawful).

The Court finds that the FAC does not state a plausible claim for injunctive relief under the UCL. Defendant's motion to dismiss Plaintiffs' Third Claim is granted to the extent Plaintiffs seek an injunction under the UCL.

### ii. Restitution

In order to recover restitution under the UCL, "[t]he offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 340 (1998) (emphasis in original).

Plaintiffs pray for "an award of restitution on the third cause of action to all persons who were injured as a result of the unlawful practices, policies, usages and customs set forth herein." (ECF No. 1-2 at 102). Plaintiffs contend they are "entitled to restitution by way of return of their policy premiums paid." (ECF No. 8 at 10). Plaintiffs may request restitution in the form of a return of the policy premiums that they paid to Defendants. First, by allegedly denying full coverage on the policy, Defendant may have "obtained [policy premiums] to which it was not entitled *and*

1 [Plaintiffs may] have given up something which he or she was entitled to keep." *Day*,
2 63 Cal. App. 4th at 340.  Second, there is no requirement that Plaintiffs must specify
3 how they intend to calculate their monetary remedies at the pleading stage. *See* Fed. R.
4 Civ. P. 8(a)(3) (requiring that a pleading contain "a demand for the relief sought, which
5 may include relief in the alternative or different types of relief"); *Seven Words LLC v.*
6 *Network Solutions*, 260 F.3d 1089, 1098 (9th Cir. 2001) (noting that "a simple request
7 'for damages' would satisfy the notice requirement [of Rule 8(a)(3)] without imposing
8 any undue burden on the drafter" but "the useless statement, 'I was wronged and am
9 entitled to judgment for everything to which I am entitled'" does not satisfy the notice
10 requirement).  Finally, at this stage in the proceedings, the Court will not dismiss
11 Plaintiffs' UCL claim for restitution as a disguised damages claim.[1]

12      Defendant's motion to dismiss Plaintiffs' Third Claim for restitution is denied to
13 the extent Plaintiffs' seek restitution under the UCL.

14      **C.  Declaratory Relief (Fourth Claim)**

15      Defendant contends that Plaintiffs cannot seek declaratory relief for denial of an
16 insurance claim, an alleged past wrong.  Defendant also contends that declaratory relief
17 is improper in this case because Plaintiffs have an adequate remedy at law in seeking
18 breach of contract damages.  Plaintiff assert that they seek redress of their present and
19 future rights: an interpretation of the parties' rights under the Policy and the Stipulation.
20 Plaintiffs cite *California Union Ins. Co. v. Club Aquarius, Inc.*, 113 Cal. App. 3d (1980)
21 for the proposition that "[a] dispute about either the insurer's duty under the contract
22 to defend its insured or the insurer's liability to its insured may be decided by
23 declaratory relief."  (ECF No. 8 at 11-12).

---

[1] Regardless of whether a UCL plaintiff must ultimately establish the lack of an adequate legal remedy in order to recover under the UCL, *see Prudential Home Mortg. Co. v. Superior Court*, 66 Cal. App. 4th 1236, 1250 (1998) (striking request for equitable relief under the UCL, where the legislature has specifically provided the methods in which title is to be cleared following satisfaction of a mortgage, because "we must assume the statutory remedies are adequate"), the Court will not dismiss Plaintiff's UCL claim for restitution due to the existence of an adequate legal remedy. It is far from clear that Plaintiffs will have an adequate legal remedy (aside from UCL remedies) at this stage in the proceedings.

"'(T)he operation of the Declaratory Judgment Act is procedural only.'" *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). In California, declaratory relief is also a procedural device. *See W. Title Guar. Co., Sacramento Cnty. Div. v. Sacramento and San Joaquin Drainage Dist.*, 235 Cal. App. 2d 815, 823 ("Declaratory relief and quiet title are procedural devises."). Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). When a claim for declaratory relief is removed from state court, the Declaratory Judgment Act applies. *See CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1070, 1072 (S.D. Cal. 2011) *(*"When a claim for declaratory relief is in federal court based on diversity of citizenship, the 'question whether to exercise federal jurisdiction to resolve the controversy bec[omes] a procedural question of federal law.'") (quoting *Golden Eagle Ins. Co. v. Travelers Companies*, 103 F.3d 750, 752 (9th Cir. 1996), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc)); *VIA Tech., Inc. v. SONICBlue Claims LLC*, No. C. 09-2109, 2010 WL 2486022, at *3 (N.D. Cal. June 16, 2010) ("[W]here a suit removed to federal court seeks declaratory relief, the fact that it was initially a state proceeding seeking declaratory relief under an equivalent state act is irrelevant, and the court must conduct its analysis under the Declaratory Judgment Act.").

28 U.S.C. § 2201 provides:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

Although California courts do not entertain declaratory judgment actions when there is an adequate remedy at law for a "fully matured cause of action for money," *Cardellini v. Casey*, 181 Cal. App. 3d 389, 62-63 (1986), the reach of the Declaratory Judgment Act is not so limited. 28 U.S.C. section 2201 simply requires a "case of actual controversy." 28 U.S.C. § 2201; *see also Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 942 (9th Cir. 1981) ("The 'actual controversy' requirement of the Act is the same as the 'case or controversy' requirement of Article III of the United States Constitution. [Citation]. Thus, the Act requires no more stringent showing of justiciability than the Constitution does."). In this case, an actual controversy exists between two parties to an insurance contract that dispute the amount of required coverage for fire damage to a residence.

Defendant's motion to dismiss Plaintiffs' Fourth Claim is denied.

**D. IIED (Fifth Claim)**

Defendant contends that Plaintiffs have failed to allege sufficient facts demonstrating that Defendant's conduct was extreme and outrageous. Defendant also contends that an insurer's delay or denial of benefits does not give rise to IIED liability. Plaintiffs contend that they have pled the elements of an IIED claim, all that is required to survive a motion to dismiss.

"The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998). "Generally, conduct will be found to be actionable where the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (citing Restatement of Torts, Second, § 46, comment d). "[T]he conduct alleged must be so extreme and outrageous as to go beyond all possible **[**bounds] of decency,

and to be regarded as atrocious, and utterly intolerable in a civilized community." *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1608 (2009).

The FAC alleges that Defendant engaged in "outrageous conduct" by using its "special relationship with Plaintiffs to intentionally cause Plaintiffs to suffer severe emotional distress." (ECF No. 1-2 at 98). The FAC alleges that "Defendants have recklessly disregarded the probability that their acts and omissions would cause Plaintiffs to sustain such emotional distress[,]" which were committed "for the purpose of causing mental anguish and emotional distress." *Id.* at 99.

The Court concludes that these allegations alone do not plausibly state an IIED claim because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Turning to the factual allegations of the complaint, Plaintiffs allege that Defendant unilaterally cancelled a scheduled appraisal to help resolve the parties' dispute as to the cost of repair. (ECF No. 1-2 at 91). Plaintiffs also allege that Defendant to date has failed to pay the full cost of repair, despite the fact that a general contractor determined a binding cost of repair for the parties. *Id.* at 89-92. An insurer's refusal to pay an insurance claim in full does not, by itself, meet the threshold of extreme and outrageous conduct. *See Coleman v. Republic Indem. Ins. Co. of Cal.*, 132 Cal. App. 4th 403, 417 (2005) ("[D]elay or denial of insurance claims is not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress."). *But see Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 401 (1970) ("We hold, therefore, that defendants' threatened and actual bad faith refusals to make payments under the policy, maliciously employed by defendants in concert with false and threatening communications directed to plaintiff for the purpose of causing him to surrender his policy or disadvantageously settle a nonexistent dispute is essentially tortious in nature and is conduct that may legally be the basis for an action for damages for intentional infliction of emotional distress."). Plaintiffs have not alleged sufficient facts demonstrating that Defendant's conduct rose to the level of extreme and outrageous.

Defendant's motion to dismiss Plaintiffs' Fifth Claim is granted.

### E. NIED (Sixth Claim)

Defendant contends that it cannot be liable on an NIED theory unless it "has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object." (ECF No. 5-1 at 21) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984-85 (1993)). Defendant also contends that it cannot be liable for negligence at all because an insurer cannot be liable for breach of the covenant of good faith and fair dealing based on "mere negligent conduct in handling the claims of its insured." *Id.* at 21-22. Defendant asserts that Plaintiffs' conclusory allegations are insufficient. Plaintiffs assert that they have pled the elements of an NIED claim. (ECF No. 9 at 12). Plaintiffs contend that NIED claims may be brought by the insured against an insurer.

In California, "there is no independent tort of negligent infliction of emotional distress." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993). "The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element." *Id.* "That duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Id.* at 985. "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by the breach of duty." *Id.* "The fact that emotional distress damages may be awarded in some circumstances (see Rest.2d Torts, § 905, pp. 456–457) does not mean they are available in every case in which there is an independent cause of action founded upon negligence." *Erlich v. Menezes*, 21 Cal. 4th 543, 554 (1999) (citation omitted). "[A] preexisting contractual relationship, without more, will not support a recovery for mental suffering where the defendant's tortious conduct has resulted only in economic injury to the plaintiff." *Id.*

"The existence of duty is a question of law." *Richards v. Stanley*, 43 Cal. 2d 60, 66-67 (1954). "[P]ublic policy considerations are relevant in determining whether a particular plaintiff may recover damages for emotional distress." *Christensen v.*

*Superior Court*, 54 Cal. 3d 868, 885 (1991).

> [S]everal factors require consideration including the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance fo

*Id.* at 885-86 (citing *Thompson v. County of Alameda*, 27 Cal. 3d 741, 750 (1980)).

The FAC alleges that "Defendants breached their duty and obligation to exercise reasonable care by engaging in the conduct alleged hereinabove," and as a result, "Plaintiffs have suffered and continue to suffer severe emotional distress, including without limitation mental distress, mental anguish, mental suffering, nervousness, grief, anxiety, worry, shock, humiliation, indignity and physical pain...." (ECF No. 1-2 at 99-100). Plaintiffs have not identified a duty "imposed by law," "assumed by the defendant," or "by virtue of a special relationship" that would give rise to negligence liability for emotional distress. *Potter*, 6 Cal. 4th at 984. Plaintiffs' allegation that Defendants "breached their duty and obligation to exercise reasonable care" by mishandling their claim is insufficient to establish Defendant's duty here because emotional distress damages are not "available in every case in which there is an independent cause of action founded upon negligence." *Erlich*, 21 Cal. 4th at 554; *see also, e.g.*, *Taylor v. Cal. State Auto. Assn. Inter-Ins. Bureau*, 194 Cal. App. 3d 1214, 1223 (1987) (affirming summary judgment on a negligent infliction of emotional distress claim brought as a third party claim against an insurer because the allegation of a duty under section 790.03 of the California Insurance Code was negated, and the plaintiff "claims no alternative basis for [the defendant's] duty to her."); *Branch v. Homefed Bank*, 6 Cal. App. 4th 793, 800 (1992) (holding that the plaintiff could not recover for emotional distress based on his employer's negligent misrepresentations regarding employment benefits and reasoning that "[w]hile damage as a result of employee's reliance on [employer's] negligent misrepresentations could be anticipated, nothing in the case suggests the peculiarly sensitive emotional trauma foreseeable in

such cases as *Allen v. Jones* or *Molien*"); *Pleasant v. Celli*, 18 Cal. App. 4th 841, 854 (1993), *disapproved of on other grounds in Adams v. Paul*, 11 Cal. 4th 583 (1995) (holding that the plaintiff client could not recover for emotional distress from her attorney's negligence in failing to file her lawsuit before the statute of limitations expired because "the disappointment one might feel upon learning that counsel has missed a filing deadline falls far short of the shock, fright, mortification, humiliation, grief, anxiety or nervousness which characterize the cases imposing liability for negligent infliction of emotional distress").

The Court concludes that Plaintiffs have not alleged sufficient facts to state a plausible NIED claim. Defendant's motion to dismiss Plaintiffs' Sixth Claim is granted.

### F. Bad Faith Breach of Stipulation (Eighth Claim)

Defendant contends that Plaintiffs cannot maintain a bad faith claim for the breach of the Stipulation because bad faith claims against an insurer are limited to bad faith breaches of an insurance policy. Plaintiffs contend that the Stipulation is an insurance contract, and insurers can be liable in tort for bad faith breaches of insurance contacts other than insurance policies.

In California "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988). "As a contract concept, breach of the duty led to imposition of contract damages determined by the nature of the breach and standard contract principles." *Id.* at 684. "An exception to this general rule has developed in the context of insurance contracts where, for a variety of policy reasons, courts have held that breach of the implied covenant will provide the basis for an action in tort." *Id.*; *see also Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 818-19 (1979) (holding that the jury was properly instructed that a breach of the implied covenant of good faith and fair dealing was established by the insured in a suit against the insured where "the evidence [was] undisputed that [the defendant] failed to properly investigate plaintiff's claim").

"The insured in a contract ... does not seek to obtain a commercial advantage by purchasing the policy - rather, he seeks protection against calamity." *Id.* at 819.

The FAC alleges that "the parties entered into a Stipulation for the Appointment of a Neutral General Contractor to Determine Binding Cost of Repair of the Eastmans' Fire Loss Damages, Claim Number 0146921937." (ECF No. 1-2 at 91). The FAC further alleges that the neutral expert provided a report stating that the total cost was $718,613.25, but Defendants only tendered Plaintiffs sums of $348,888.38 and $191,147.88. *Id.* at 89. The Stipulation is attached as Exhibit B to the FAC, and provides that the "scope and cost of repair of fire-related damages [determined by the neutral expert] is binding as to all parties and may be introduced into evidence at any Court or arbitration proceedings" and that "Allstate will tender the covered cost of repair of fire-related damages up to the covered policy limits, minus previously paid policy benefits, within fourteen days." (ECF No. 1-2, Ex. B at 179). Whether the stipulation is construed as a modification of the Policy or a separate settlement agreement between insurer and insured, the Stipulation is an alleged contract, which "imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Foley*, 47 Cal. 3d at 683. Defendant has cited no authority for the proposition that tort damages are limited to bad faith breaches of insurance policies in their original form and do not extend to bad faith breaches of other contracts between insurer and insured. "*All* insurance contracts contain an implied covenant of good faith and fair dealing which 'requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.'" *Tibbs v. Great Am. Ins. Co.*, 755 F.2d 1370, 1375 (1985) (emphasis added). If tort liability was limited to bad faith breaches of original insurance policies, insurers could avoid tort liability by simply entering into modified contracts with the insured.

"[B]efore an insurer can be found to have acted tortiously (i.e., in bad faith), for its delay or denial in the payment of policy benefits, it must be shown that the insurer acted *unreasonably* or *without proper cause*" at the time the claim was denied or

delayed. *R&B Auto Center, Inc. v. Farmers Grp., Inc.*, 140 Cal. App. 4th 327, 354 (2006) (citing *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 1429 (1999)). The Court concludes that Plaintiffs have stated a plausible claim for bad faith breach of the Stipulation by alleging that Defendant agreed to a neutral evaluator that would determine a binding cost of repair, but inexplicably reneged on its promise after the neutral evaluator determined a binding cost of repair.

Defendant's motion to dismiss Plaintiffs' Eighth Claim is denied.

**IV. Conclusion**

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 5) is GRANTED in part and DENIED in part. The Motion to Dismiss is granted as follows. Plaintiffs' Third Claim is dismissed to the extent Plaintiffs' seek an injunction pursuant the UCL. Plaintiffs' Fifth and Sixth claims are dismissed.

DATED: October 20, 2014

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge