1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                  SOUTHERN DISTRICT OF CALIFORNIA

9
WILLIAM EASTMAN and PATRICIA
10   EASTMAN, as individuals,              Case No. 3:14-CV-00703-WQH-WVG

11                           Plaintiffs,

12        v.                               **ORDER ON WITNESS**
                                           **OBJECTIONS TO PLAINTIFF'S**
13                                         **SUBPOENA TO TESTIFY TO**
                                           **BENJAMIN D. BAUSLEY**
14   ALLSTATE INSURANCE COMPANY
     and DOES 1–100, inclusive,            **(Doc. Nos. 26, 28, 29, 30)**
15                           Defendants.

16
17
18   **I.     INTRODUCTION**

19        Before the Court are four documents–Witness Objections to Plaintiff's[1] Subpoena

20   to Testify to Benjamin D. Bausley ("Objection"), (Doc. No. 26); Opposition to Witness

21   Objections to Plaintiff's Subpoena to Testify to Benjamin D. Bausley ("Opposition"),

22   (Doc. No. 28); Reply to Opposition to Objection to Subpoena to Testify ("Reply"), (Doc.

23   No. 29); and Allstate's Response to Plaintiffs' Opposition to Objections to Plaintiffs'

24   Subpoena to Benjamin D. Bausley ("Response"), (Doc. No. 30)–related to a single issue:

25   _____

26   [1] The use of the singular "Plaintiff's" is no oversight, for only the writer of the fourth used the correct
     caption, *i.e.* "Plaintiffs'" instead of "Plaintiff's," (Doc. No. 30). In its early filings, however, this author
27   too mistakenly used the singular. (Doc. Nos. 5, 9.)

28                                       1

the deposition subpoena served on Mr. Benjamin D. Bausley, both in his personal capacity and on behalf of his corporation, Bausley & Associates, Inc., ("Bausley"),[2] by counsel for Mr. William Eastman ("Mr. Eastman") and Ms. Patricia Eastman ("Ms. Eastman") (collectively, "Plaintiffs") that ordered him to produce a slew of documents requested by Plaintiffs for purposes of the present action, a suit for breach of contract filed by Plaintiffs against Allstate Insurance Company ("Allstate" or "Defendant"),[3] in accordance with Federal Rule of Civil Procedure 30.[4] In bare essence, Plaintiffs, Bausley, and Defendant dispute the extent to which a specific provision of California law applies, whether the possible breach of a confidentiality agreement provides sufficient grounds for quashing an otherwise proper subpoena, and whether the evidence sought by Plaintiffs from Bausley satisfies the minimal relevance standard or the balancing test governing discovery under the Rules.

For the reasons more fully explicated below, this Court DENIES the Objection IN PART and WITHOUT PREJUDICE. While this Court is generally unconvinced by the Opposition, Reply, and Response, the reasons stated therein do have some cognizable merit, and this Court therefore exercises its power under Rule 26(b)(2)(C) to limit Plaintiffs' requests in some measurable way in light of this case's particular needs. Accordingly, subject to the discrete limitations imposed in this order's final paragraphs, it orders Bausley to provide the requested documents at a date to be mutually determined upon by Bausley and Plaintiffs.

---

[2] According to the Objection, the subpoena was served on Benjamin Bausley. (Doc. No. 26 at 1.) Through his Reply, however, Mr. Bausley refers to Bausley & Associates only. (Doc. No. 29.) For purposes of this order, "Bausley" refers to both the latter and the former, prompting this Court to utilize the third-person singular throughout.

[3] Technically, Allstate is not the sole defendant; the complaint lists "Does 1–50." As these persons remain unknown and unknowable and Allstate stands forth as the sole responsive Defendant, this Court will not use the plural form. Defendant derides these "50 'Doe' defendants " as "fictitious." (Doc. No. 1 at 2.)

[4] In this order, the terms "Rule" and "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

## II.   BACKGROUND

**A.   Procedural History**

     This case arose from a complaint filed in the Superior Court of the State of California for the County of San Diego on January 9, 2013. (Doc. No. 1-2 at 73.) Plaintiffs served Defendant on March 10, 2014. (Doc. No. 1 at 2.) The currently operative complaint, an amended one, was filed on March 20, 2014. (Doc. No. 1-2 at 102; Doc. No. 10 at 1.)

     This regnant filing tells a simple tale. On May 19, 2009, Plaintiffs purchased an "Allstate Insurance Company Deluxe Plus Homeowners Policy" ("Policy"), coverage commencing on that May date and extending through May 19, 2010. (Doc. No. 1-2 at 87–88.)  Merely an extension, this policy insured a house located at 3046 Colley Lane, Escondido, CA 92025-7740 ("Subject Property"). (Id. at 88.) Consistently and without disruption, Plaintiffs paid each and every premium owed for 2009–10. (Id.) On August 30,  2009, a fire struck the Subject Property, purportedly "engulf[ing] the master bedroom and other areas" and "causing extensive damage inside and outside the home." (Id.) Seemingly, this conflagration rendered it "uninhabitable." (Id.) On behalf of Plaintiffs, Ms. Eastman reported this incident to Defendant on August 30, 2009. (Id.) Afterward, as authorized by the Policy, Plaintiffs submitted an insurance claim for the badly damaged Subject Property. (Id.)

     From that moment onward, Plaintiffs contend, Defendant performed sundry misdeeds. In Plaintiffs' recounting, Defendant breached its obligation under the Policy by "[f]ailing to conduct a prompt, full and complete investigation into the acts and circumstances of Plaintiffs' claims"; "[c]ontinuing to delay in providing Plaintiffs their contractually bargained-for Policy benefits"; "[u]sing improper standards to deny Plaintiffs' claims"; "[e]ngaging in improper claims handling"; "[a]voiding payment of Plaintiffs' claims by accepting an incorrect version of facts or circumstances or contract interpretation that supported a basis to deny or improperly limit coverage under the

[p]olicy"; and "[f]ailing to give at least as much consideration to Plaintiffs' welfare as Defendants gave to their own interests." (Id. at 93.) By these and other alleged actions, Defendant violated more than the Policy's express terms; it defied contract law's omnipresent "implied covenant of good faith and fair dealing." (Id. at 94–95.) Its conduct, Plaintiffs continue, even violated the prohibition on "unfair business practices" in California's Unfair Competition Law ("UCL"). (Id. at 96–97.) Based on the Policy's professed breach, Plaintiffs crafted three other causes of action, including a prayer for declaratory relief and the torts of intentional and negligent infliction of emotional distress.[5] (Id. at 98–100.) The complaint ends by asseverating two causes arising from Defendant's alleged violation of the Parties' Stipulation for the Appointment of a Neutral General Contract to Determine Binding Cost of Repair of the Eastmans' Fire Loss Damages. (Id. at 91.) In particular, even though the mutually selected expert apparently estimated the cost of repair as $718,613.25, (Id. at 92), Defendant has yet to honor that determination, a refusal from which Plaintiffs' final two causes of action–"Breach of Contract-Stipulation" and "Breach of Covenant of Good Faith and Fair Dealing"–spring, (Id. at 100–01). In the amended complaint's final page, Plaintiffs plead for a panoply of remedies, including: general, compensatory , and punitive damages; restitution; costs; attorneys' fees; a permanent injunction; and all other "economic/non-economic damages in an amount according to proof at trial." (Id. at 102.)

Defendant, naturally, responded. On March 27, 2014, it removed the action to the United States District Court for the Southern District of California. (Doc. No. 1 at 1.) Defendant filed the Motion to Dismiss Plaintiff's First Amended Complaint on April 14, 2014. (Doc. No. 5.) On October 20, 2014, the Honorable William Q. Hayes dismissed Plaintiffs' fifth and sixth claims and their third to the extent they sought an injunction under the UCL ("Order on MTD"). (Doc. No. 10 at 16.) With the amended complaint's

---

[5] Both emotional distress claims have also been dismissed. (Doc. No. 10 at 16.)

range now tapered, Defendant finally answered on November 18, 2014. (Doc. No. 12.) Conceding little–that the Policy was purchased, and that it related to a home later set ablaze, (Id. at 2)–and repeatedly recapping the content of the Order on MTD, (Id. at 6–9), general denials pepper the answer's first nine pages, (Id. at 1–9.) In the remainder, Defendant propounded forty-six (46) affirmative defenses, concluding with a reservation of "additional affirmative defenses." (Id. at 9–23.)

The Parties first appeared before this Court on February 4, 2015, for an Early Neutral Evaluation Conference, (Doc. No. 19), set by an order dated January 15, 2014, (Doc. No. 17). When the Parties proved unable to settle this case at this first colloquy, this Court issued the Order Following Early Neutral Evaluation Conference, Setting Rule 26 Compliance, and Notice of Case Management Conference. (Doc. No. 18.) In accordance with this order's final numbered paragraph, on March 23, 2015, this Court held a telephonic Case Management Conference, (Doc. No. 21), and issued the Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings, (Doc. No. 20). On April 6, 2015, Defendant filed the Joint Motion for Protective Order and the Joint Motion for Discovery re Interrogatories, Depositions, and Counsel. (Doc. Nos. 22, 23.) On April 7, 2015, the Court granted both these motions. (Doc. Nos. 24, 25.)

On April 13, 2015, the relevant subpoena was served on Bausely. (Doc. No. 28 at 2.) Originally, the subpoena sought documents in ten categories:

(1) "[t]he complete file RELATING TO the property located at 3046 Colley Lane, Escondido, California" ("Category One");

(2) "[a]ny and all DOCUMENTS evidencing COMMUNICATIONS between YOU and ALLSTATE INSURANCE COMPANY, at any time" ("Category Two");

(3) "[a]ny and all documents evidencing COMMUNICATIONS between YOU and PLAINTIFFS, at any time" ("Category Three");

(4) "[a]ny and all DOCUMENTS which YOU received from ALLSTATE

5

INSURANCE COMPANY at any time" ("Category Four");

(5) "[a]ny and all DOCUMENTS which YOU received from PLAINTIFFS at any time" ("Category Five");

(6) "[a]ny and all DOCUMENTS from YOU to ALLSTATE INSURANCE COMPANY at any time" ("Category Six");

(7) "[a]ny and all DOCUMENTS from YOU to PLAINTIFFS at any time" ("Category Seven");

(8) . . . ("("Category Eight");[6]

(9) "[a]ny and all DOCUMENTS showing the total amount of revenue YOU received from ALLSTATE INSURANCE COMPANY from 2008 to present" ("Category Nine"); and

(10) "[a]ny and all DOCUMENTS showing the total amount of work YOU have performed or been contracted to perform on behalf of ALLSTATE INSURANCE COMPANY in any matter from 2008 to the present" ("Category Ten").

(Id. at 2–3.)  Apparently, though Bausley is by no means a party to this action, no attempt to meet and confer with Plaintiffs' counsel was initiated by Bausley or Defendant upon this subpoena's receipt. (Id. at 3.)

The Objection was filed on April 21, 2014, (Doc. No. 26), at which time this Court set forth a briefing schedule, (Doc. No. 27). On May 1, 2015, Plaintiffs filed the Response. (Doc. No. 28.) Bausley soon thereafter retorted with the Response, (Doc. No. 28), which was followed by Plaintiffs' Reply, (Doc. No. 29). Defendant filed the last relevant piece on May 8, 2015. (Doc. No. 30.)

**B.   Arguments Before the Court**

Brief, the Objection presents three discrete grounds of opposition to Plaintiffs'

---

[6] This category was apparently withdrawn due to an unspecified typographical error. (Doc. No. 28 at 2.)

subpoena. (Doc. No. 26.) First, the "confidential" documents sought are protected from disclosure by Section 791.13 of California's Insurance Code, commonly known as the Insurance Information and Privacy Protection Act ("IIPPA").[7] (Id. at 1.) Second, four of Plaintiffs' nine live requests[8] seek "proprietary records . . . in breach of a confidentiality agreement between" Defendant and Bausley. (Id. at 2.) Third, the documents are "neither relevant nor reasonably calculated to lead to discovery of admissible evidence," as Rule 26(b)(1) requires. (Id.)

Far more comprehensive than Bausley's opening three paragraphs, Plaintiff's Reply contains four counters. (Doc. No. 28.) First, because Bausley was the supposedly key investigator assigned to Plaintiffs' Allstate file and because Plaintiffs are alleging Defendant acted in bad faith in evaluating the Plaintiffs' claim, Bausley's file on Plaintiffs' case likely "contains documents that are relevant to both the Plaintiffs' claim as well as Allstate's defense." (Id. at 3.) In fact, all the documents sought "are either specifically related to the Plaintiffs['] loss or are relevant to show bias and a relationship with Allstate." (Id. at 5.) Third, citing to IIPPA's statutory purpose, Plaintiffs assert that IIPPA is not relevant to "discovery procedures during a bad faith litigation," and nothing within this act "provides that a witness can avoid proper discovery and a subpoena." (Id. at 4.) Finally, regarding Bausley's statement that four categories of documents include proprietary records encompassed by a confidentiality agreement, Plaintiffs first note the absence of any evidence for this assertion–"There is no evidence before this Court that a confidentiality agreement between Allstate and Mr. Bausley exists beyond a mere statement in an objection nor does Mr. Bausley explain how the requested documents would be proprietary"–and then give a reason: "These documents are necessary to explore [the] potential bias of this expert[, Bausley,]" as well as any possible "lack of

---

[7] Throughout this order, IIPPA will either be referred to by name or by its section number, *i.e.* "Section 791.13" or "§ 791.13."

[8] These four request are numbers two, four, nine, and ten. *See supra* 5–6.

independence" or his usual "methods of handling this [and other] claims." (Id. at 4–5.)

The Reply boosts far more detail than Bausley's Opposition. (Doc. No. 29.) Without citing to Rule 26(b)(2)(C), Bausley nonetheless rests on the balancing test that it enthrones. (Id. at 2.) First, Bausley argues that records made in the 1990s and unrelated to this case's precipitating fire  cannot be relevant. (Id. at 3.) Second, Plaintiffs have no need to rely upon these documents to show Bausley's potential bias in favor of Allstate; rather, "[t]he issue can be resolved by a hand full of deposition questions and does not require the tens of thousands of pages of documents that Plaintiff contends are necessary to produce." (Id.) Third, Plaintiffs have made an "overly broad" request, as they have no true need for "all documents" exchanged by Bausley and Allstate, their demand not even limited to "the Colley Lane fire, to business in Southern California, to fire, or even to disaster mediation." (Id.) Fourth, with the exception of Categories Nine and Ten, Plaintiffs placed no time limit on their subpoena, seeking for all documents transmitted by Bausley and Allstate at "any time," and thereby have importuned for far too much that is unnecessary. (Id.) The Reply continues, once more invoking the existence of a confidentiality agreement and insisting, in light of Bausley's willingness to "freely admit that it is retained by Allstate and does significant business with Allstate," that "[t]he price of invading the witnesses privacy for additional financial information is not counter balanced by the benefit to Plaintiff." (Id. at 4.)  Along this vein, the Reply adds: "The breadth of the document requests are all encompassing and are of no relationship to disaster remediation generally, let alone this particular fire. The time period is essentially forever." (Id.) It again insists that knowing of Bausley's retention is enough to demonstrate bias, no need existing "to uncover the financial relationship between Bausley & Associates and Allstate Insurance Company," and once more emphasizes the applicability of a confidentiality agreement. (Id.) In light of these four causes, the subpoena should be limited "to matters pertaining to the property located at 3046 Colley Lane," documents purportedly contained in categories one, three, five, and seven alone

8

(Id. at 5.) To Bausley, the right result is obvious: "The Subpoena should be modified."
(Id. at 4.)

Briefing on this issue terminated with Defendant's Response. (Doc. No. 30.) In this lengthy piece, Defendant concedes that it has "no objection to Bausley producing documents pertaining to the Eastmans, their property, or their Allstate claim." (Id. at 4.) However, as to documents "pertaining to *other* Allstate policyholders, properties by *other* Allstate policyholders, or claims presented by *other* Allstate policyholders," it objects for two reasons. (Id. (emphasis in original)) First, "[t]hese documents have nothing whatsoever to do with the Eastmans, their property, or their case." (Id.) Second, production would violate "settled California law" as embodied in IIPPA. (Id.) Defendant even cites a string of cases supposedly standing for the proposition that "California district courts routinely apply Section 791.13 to protect the privacy of . . . non-party insured." (Id. at 4–5.) They insist Bausley, as a person and an entity hired by Allstate to collect information related to insurance coverage, is covered by the statute. (Id. at 6.) As such, IIPPA's prohibition against disclosing personal or private information without written consent surely applies, and this Court must deem Plaintiffs' subpoena legally improper as a matter of California law to the extent it seeks documents unrelated to their own case or their own file.

## III.   DISCUSSION

### A.   Introduction: Applicable Standards for a Rule 30 Subpoena's Quashing

Applicable to subpoenas for producing documents under Rule 30(b)(2) as surely as to the production of documents under Rule 34(a), Rule 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1); *see, e.g., Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 579 (D.S.D. 2006) (noting that the "broad scope of discovery" in Rule 26(b)(1) "applies to depositions"); *Bell v. Bd. of Educ.*, 225 F.R.D. 186, 193 (S.D. W. Va. 2004) (same). Assuming this famously low threshold is met, Rule 26 allows "two approaches to

1   seeking the protection of sensitive . . . information." *Pearson v. Miller*,  211 F.3d 57, 65

2   (3d Cir. 2000). First, a party may argue that the information is protected by some

3   evidentiary privilege. *Id.* at 66. When, as here, state law supplies the rule of decision,

4   "state privileges apply." FED. R. EVID. 501; *Gill v. Gulstream Park Racing Ass'n*, 399

5   F.3d 391, 401 (1stc Cir. 2005) (citing *id.*). Second, in the absence of such a privilege,

6   Rule 26 "affords the courts the power to balance of privacy and discovery interests by

7   allowing for a protective order when 'justice requires to protect a party or person from

8   annoyance, embarrassment, oppression, or undue burden or expense.'" *ICG Commc'ns,*

9   *Inc. v. Allegiance Telecom*, 211 F.R.D. 610 (N.D. Cal. 2002) (construing Rule 26(c)); *see*

10  *also, e.g.*, *Gill v. Gulstream Park Racing Ass'n*, 399 F.3d 391, (1st Cir. 2005)

11  ("Evidentiary privileges formally recognized by state law are not the only relevant factors

12  in the Rule 26 balancing act."); *In re Sealed Case (Medical Records)*, 381 F.3d 1205,

13  1216 (D.C. Cir. 2004) (citing *Pearson*, 211 F.3d at 65). In sum, then, the existence of a

14  privilege, followed by the application of Rule 26's balancing test, constitute the twin

15  methods for any party to oppose a Rule 30(b)(2) subpoena, the only means afforded by

16  the Rules for the disfavored practice of limiting apparently relevant discovery, *cf. United*

17  *States v. Nixon*, 418 U.S. 683, 710, 94 S. Ct. 2090, 3108, 41 L. Ed. 2d 1039 (1974)

18  ("[T]he public . . . has a right to every man's evidence, except for those persons protected

19  by a constitutional, common-law, or statutory privilege." (internal quotation marks

20  omitted)).

21          Defendants and Bausley choose both routes available to them under this Rule 26

22  framework. In their opposition to Plaintiffs' subpoenas, Bausley first and Defendants

23  alone relied on a privilege embodied in state law, IIPPA.[9/] (Doc. Nos. 26, 29, 30.)

24  _____

25  [9/] Neither entity has relied on the *qualified* right to privacy set forth in Article I of the California
    Constitution. Whether either would have the standing to do so is beyond this order's scope. *See*
26  *Edu-Science (USA) Inc. v. IntuBrite, LLC*, No. 12cv1078 BAS (JLB), 2015 U.S. Dist. LEXIS 79409, at
    *7, 2015 WL 3796111, at *3 (S.D. Cal. June 17, 2015) ("A party that is not the recipient of the

27                                                                              (continued...)

28                                          10

1    Bausley subsequently relied on the documents' alleged confidentiality provision, their

2    limited relevance, and a balancing of the equities decidedly favorable to his own position.

3    (Doc. Nos. 26, 29.) This Court considers each argument in turn.

4    **B.    IIPPA's Inapplicability**

5         At first blush, Defendant and Bausley appear to advance a most credible reading of

6    IIPPA. True, as Defendant argues, (Doc. No. 30 at 4), this statute reads: "An insurance

7    institution, agent, or insurance-support organization shall not disclose any personal or

8    privileged information about an individual collected or received in connection with an

9    insurance transaction unless the disclosure" is made pursuant to the relevant individual's

10   "written authorization," CAL. INS. CODE § 791.13. True, as Defendant contends,

11   "California district courts routinely apply § 791.13 to protect the privacy interests of its

12   non-party insured." (Doc. No. 30 at 5.) Based on this section's first few paragraphs, if

13   read no further, and on a handful of unpublished precedents, if dissected in no greater

14   depth, Defendant and Bausley would be indisputably correct to claim with strident

15   certainty and confidence that, because "[t]he Eastmans have presented no evidence that

16   Allstate's customers have authorized the disclosure of their personal information (indeed

17   there is no such evidence)," their subpoena's enforcement, by virtue of Federal Rule of

18   Evidence 501, would violate "Section 791.13's prohibition against disclosing personal or

19   private information of Allstate customer's without written consent." (Id. at 6; see also

20   Doc. No. 26 at 1.)

21        Ostensibly beguiling, such conclusion does not follow from any thorough

22   dissection of this statute's plain and unambiguous terms. While written authorization is

23

24   ⁹/(...continued)

25   subpoena has standing to challenge the subpoena where its challenge asserts that the information is
     privileged or protected to itself." (internal quotation marks omitted) (citing *Diamond State Ins. Co. v.*

26   *Rebel Oil Co.*, 157 F.R.D. 691, 695 (D. Nev. 1994)). For the relevant analytical framework, see *Pioneer*
     *Electronics (USA), Inc. v. Super. Ct.*, 150 P.3d 198 (2007), and *Hill v. Nat'l Collegiate Athletic Ass'n*,

27   865 P.2d 633 (1994).

28

normally required for the disclosure of "any personal or privileged information about an individual collected or received in connection with an insurance transaction," CAL. INS. CODE § 791.13(a); *Quadrant Info. Servs., LLC v. LexisNexis Risk Solutions, Inc.*, No. C 11-6648 SBA, 2012 U.S. Dist. LEXIS 108596, at *13, 2012 WL 3155559, at *5 (N.D. Cal. Aug. 2, 2012), as Defendant rightly contends, (Doc. No. 30), the statute's second paragraph enumerates a multitude of exceptions, CAL. INS. CODE § 791.13(b). Most relevant here, no written authorization is required if (1) the release"[t]o a person *other* than an insurance institution, agent, or insurance-support organization" and (2) is "[i]n response to a facially valid administrative or *judicial order*, including a search warrant or *subpoena*." *Id.* § 791.13(h) (emphasis added). In fact, an even broader exception appears to exist in subparagraph (g), which exempts any disclosure to "a person *other* than an insurance institution, agent, or insurance-support organization" that is either "*permitted* or required by law." *Id.* § 791(g) (emphasis added); *Conn. Indem. Co. v. Super. Ct.*, 3 P.3d 868, 875 (Cal. 2000) (citing *id.*). As other courts have noted, the language in these two sections is rather clear, unambiguously exempting from IIPPA's nondisclosure bar and written authorization requirement any disclosure made pursuant to a judicial order or, more specifically, a subpoena duly authorized by law,[10/] or if the release is permitted by applicable governing law. *See, e.g.*, *Cerone v. Reliance Std. Life Ins.*, No. 13cv184-AJB (DHB), 2013 U.S. Dist. LEXIS 175300, at *14 n.1, 2013 WL 6579006, at *5 n.1 (S.D. Cal. Dec. 13, 2013) (applying § 791(h) as to an order requiring production of documents); *Wahl v. Am. Sec. Ins. Co.*, No. C 08-0555 RS, 2010 U.S. Dist. LEXIS 84878, at *11–12, 2010 WL 2867130, at *4 (N.D. Cal. July 20, 2010) (applying § 791(g)

---

[10/] Though issued pursuant to a federal rule, the subpoena at issue is no less authorised by law than any other order issued pursuant to a federal statutory command. *See Chandler v. James*, 180 F.3d 1254, 1266-67 (11th Cir. 1999) (noting that a refusal to comply with a subpoena duces tecum is violation of a court's judicial authority).

as to disclosure of information necessary for class notice to be mailed).[11] Authorized by Rule 30, a procedural rule bearing the full force and effect of federal statutory law, Plaintiffs' subpoena cannot be rightly deemed anything but a disclosure either "permitted by law" or compelled by a subpoena, two of IIPPA's explicitly encoded exceptions. In such cases, no consent can be required, and no bar can be raised, by IIPPA alone. *See, e.g.*, *In re Ins. Installmant Fees Cases*, 150 Cal. Rptr. 3d 618, 639 n.18 (Cal. Ct. App. 2012) (construing *Conn. Indem.*, 3 P.3d 868, as stating that compliance with subpoenas is permitted under IIPPA "without notice or consent to the insureds . . .when [the] disclosure is otherwise permitted or required by law").

Four distinct elements of the cases cited by Defendant leave this Court unpersuaded by their relatively brief ratiocination regarding IIPPA's reach to the present dispute. (Doc. No. 30 at 5–6.) First, each is an unpublished opinion by a trial court in which an analysis of IIPPA did not amount to the relevant court's central concern. At best, this statute, so pivotal to the arguments raised by Defendant and Bausley, was the focus of a few short sentences. Second, and somewhat relatedly, not one of these four opinions discussed the application of the exception detailed in subparagraphs (g) and (h) and directly applicable to a valid subpoena, whether issued under Rule 30(c)(2) or Rule 45, or a disclosure mandated by existing law. *See J&M Assocs. v. Nat'l Union Fire Ins. Co.*, No. 06-CV-0903-W (JMA), 2008 U.S. Dist. LEXIS 16855, at *10, 2008 WL 638137, at *4 (S.D. Cal. Mar. 4, 2008) (citing to subparagraph (a) alone); *Cecena v. Allstate Ins. Co.*, No. C05-03178 JF (HRL), 2006 U.S. Dist. LEXIS 86291, at *5 (N.D.

---

[11] It is notable, albeit neither directly apposite nor decisive to the issue at hand, that California's ligation privilege would bar any suit premised on Defendant's alleged violation of § 791.13. The California Supreme Court has held that the ligation privilege encoded in California Civil Code § 47 bars purely statutory claims of invasion of privacy where the damages available are actual and monetary rather than statutory. *Grant v. United States*, No. 2:11-cv-00360 LKK KJN PS, 2011 U.S. Dist. LEXIS 61833, at *31–32, 2011 WL 2367656, at *11 (E.D. Cal. June 9, 2011). Contravention of § 791.13 entitles the winning plaintiff to no more than actual damages. CAL. INS. CODE § 791.20(b). Accordingly, "[t]he litigation privilege" encoded in California Civil Code § 47 may yet bar any tort action "based on disclosure of information obtained in discovery." Westinghouse Elec. Corp. V. Newman & Holtzinger, P.C., 46 Cal. Rptr. 2d 151, 156 n.1 (Cal. Ct. App. 1995) (analyzing Cal. Civ. Code § 47).

Cal. Nov. 9, 2006) (construing California law to require "that non-party insureds must first give their consent to disclosure in writing in response to a letter approved by the court"); *Shapiro v. Paul Revere Life Ins. Co.*, No. C-96-1758 FMS (JL), 1997 U.S. Dist. LEXIS 16286, at *9, 1997 WL 601430, at *3 (N.D. Cal. Sept. 18, 1997) (same). Third, at least *one–Quadrant Information Services, LLC v. LexisNexis Risk Solutions–*actually found the prohibition not to apply to the case at hand, as Quadrant had failed to allege that LexisNexis was "an 'insurance institution,' 'agent,' or 'insurance-support organization.'" *Quadrant Info. Servs., LLC*, 2012 U.S. Dist. LEXIS 108596, at *13, 2012 WL 3155559, at *5. This same case, moreover, specifically alluded to the existence of "specific conditions" that may justify disclosure, though it did not deal with subparagraph (h). *Id.* Finally, and most definitively, the statute's plain language is clear–an exception is made for a subpoena such as the one employed by Plaintiffs–and cannot be set aside by any court, the text as written limiting judicial ingenuity and offering no recourse in light of its clarity.

In sum, due to the existence of an explicit statutory exception for subpoenas, IIPPA provides no defense of use to either Defendant or Bausley.

**B.    Irrelevance of Confidentiality Clause**

However much Bausley might so insist, (Doc. No. 26 at 2; Doc. No. 29 at 4), his objection to Categories Two, Four, Nine, and Ten on the basis of the existence of a confidentiality clause will not suffice by itself as a matter of law.[12/]

Despite Bausley's protestations, the law on this issue is well-settled, a fact obscured by his failure to cite a single case to buttress this argument in either the Objection or the Reply. Undeniably, "in exercising their discretion under the rule, courts

---

[12/] The Court cannot quite decipher Bausley's meaning when he calls his records "proprietary." (Doc. No. 26 at 2.) The adjective itself means nothing more than that he is the records' owners. BLACK'S LAW DICTIONARY (14thg ed. 2014) ("proprietary"). To the extent Bausley intends to imply his records contain information that must be hidden as a business secret, the analysis in this section as to confidential business information would remain unchanged.

have long recognized that interests in privacy may call for a measure of extra protection, even where the information sought is not privileged." FED. R. CIV. P. 26(b) advisory committee's note (1970 amend.). However, courts have long refused to recognize any "absolute privilege for trade secrets and similar confidential information" in favor of a case-by-case approach that balances "privacy against the need for disclosure." *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362, 99 S. Ct. 2800, 2813, 61 L. Ed. 2d 587 (1979) (citations omitted). Other confidential business information is generally afforded even less protection than trade secrets. *Littlejohn v. BIC Corp*., 851 F.2d 673, 685 (3d Cir. 1988). Indeed, to handle such confidential information in other contexts, courts have endorsed the use of protective orders rather than condoned nondisclosure. *See, e.g.*, *Soto v. City of Concord*, 162 F.R.D. 603, 614 (N.D. Cal. 1995); *Chism v. Cnty. of San Bernadino*, 159 F.R.D. 531, 535 (C.D. Cal. 1994) (endorsing use of protective order to keep internal use-of-force tactics secret); *Hampton v. City of San Diego*, 147 F.R.D. 227, 231 (S.D. Cal. 1993) (endorsing use of protective order to protect privacy interests of police officers); *Miller v. Pancucci*, 141 F.R.D. 292, 301 (C.D. Cal. 1992) (encouraging the use of well tailored protective orders in discovery of police files); *Kelly v. San Jose*, 114 F.R.D. 653, 662, 665 (N.D. Cal. 1987) (contending that "pre-weighting is consistent with the well-established notion that because privileges operate in derogation of the truth finding process the law places the burden of proving all the elements essential to invoking any privilege on the party seeking its benefits," and later adding, "protective orders can be used to prevent disclosure to the public generally").

In light of this preponderance of case law, Bausley's argument must fail for two reasons. First, an absolute claim of confidentiality has never been favored; instead, courts have opted for a balancing of interests akin to that already mandated under Rule

26(b)(2)(C).[13/] Second, in this case, a protective order had already been entered, (Doc. No. 24), providing Bausley with the kind of security typically afforded confidential information in case after case. Regardless, a mere confidentiality clause cannot prove that anything worthy of protection is in fact involved, as Plaintiffs cogently stress, (Doc. No. 28 at 4–5.) Even if the documents referenced could be deemed truly secret, an order will prevent their general broadcasting, and even their possible secrecy will not obviate the need to balance every germane interest. An absolute claim of confidentiality will, in essence, never do.

As such, this Court rejects this second ground for quashing Plaintiffs' subpoena.

**C.   Evidence of Bias**

In his Reply, Bausley added a third reason. Because he will testify to the fact that he and his company have had a longstanding relationship with Allstate, no more is needed to possibly show his potential bias. (Doc. No. 28 at 3.) In his own words, "Bausley & Associates is retained by Allstate and Plaintiff knows that"; "there is no need to uncover evidence of the obvious." (<u>Id.</u> at 4.) These documents were "[o]stensible . . sought to in order to show potential bias by Bausley & Associates in favor of All state Insurance Company." (<u>Id.</u>) To wit, no need for such records can be credibly posted, Bausley maintains, as he will readily admit to his longtime relationship with Allstate. (<u>Id.</u>) In his view, such a bare admission affords Plaintiffs with all the evidence they may rightly need without an unnecessary impugning.

Despite Bausley's vociferous insistence, this Court respectfully disagrees. As one jurist has succinctly observed in a case directly on point,  "[o]ther insureds' claim files may be relevant to show whether there have been other instances of misconduct in the past by a particular claims representative and the insurer's knowledge of it." *Cecena*,

---

[13/] For more, see Part III.D.

2006 U.S. Dist. LEXIS 86291, at *4.[14/] This conclusion has been echoed by other courts, including this state's supreme tribunal, applying the very code under which Plaintiffs now proceed. *See, e.g.*, *Colonial Life Accident Ins. Co. v. Super. Ct.*, 647 P.2d 86, 89 (Cal. 1982) (ruling that based on California's version of Rule 26(b)(1), encompassing an identical minimal relevance standard, "Colonial's suggestion that the discovery of other insureds whose claims were negotiated by Sharkey will not yield relevant, admissible evidence, is patently meritless"). Either case fatally undermines Bausley's position. Certainly, as it explicates controlling substantive law, the latter strikes this Court as more than enough to tip the scales against Bausley's stand.

Logic, moreover, suggests the very opposite of Bausley's belief, for the extent to which Bausley depends upon Allstate's business and thus goodwill may raise legitimate doubts about his objectivity that the relationship's mere existence can never do. For example, the kinds of cases in which it has served as an investigator and the results that it has netted may yet suggest a pattern that could undermine the credibility of Bausley's future testimony or its past analyses, most especially its evaluation of Plaintiffs' insurance claim. If Bausley's business relied on Allstate for only 2% of its revenue, the relationship itself may hint at little of significance to the present matter. In contrast, if Allstate's payments constituted the vast majority of Bausley's earning and if its files reveal a pattern, both persistent and obvious, of undervaluing other similar fire claims in which Allstate was the insurer, the intimation of bias may be graver still. Regardless, the fact that a relationship exists will tell little, while the particular of an multi-decade association, from the dollars and cents exchanged and accumulated to the individual cases weighed to the standard used, may amount to far more in the caldron of a future examination. Recently, in an oral ruling soon to be memorialized in a written order, this Court has so decided in a different case; now new argument is here propounded of

---

[14/] Interestingly, the Defendant here was the defendant in the cited case. Defendant, however, does not make this argument; Bausley alone does so.

1  sufficient gravity to dissuade it from reaching these same conclusion once more.

2       Based on reason and on case law, this Court rejects Bausley's third ground for

3  opposing Plaintiffs' subpoenas.

4  **D.  Balancing Test**

5       Whether on motion or *sua sponte*, though the text itself is mandatory, a court

6  "must limit the frequency or extent of discovery otherwise allowed by these rules or by

7  local rule if it determines that: (i) the discovery sought is unreasonably cumulative or

8  duplicative, or can be obtained from some other source that is more convenient, less

9  burdensome, or less expensive; (ii) the party seeking discovery has had ample

10  opportunity to obtain the information by discovery in the action; or (iii) the burden or

11  expense of the proposed discovery outweighs its likely benefit, considering the needs of

12  the case, the amount in controversy, the parties' resources, the importance of the issues at

13  stake in the action, and the importance of the discovery in resolving the issues." Fed. R.

14  Civ. P. 26(b)(2)(C); *Kiln Underwriting, Ltd. v. Jesuit High Sch. Of New Orleans*, Nos.

15  05-04350c, 06-05060, 06-05057, 2008 U.S. Dist. LEXIS 83535, at *4–6, 2008 WL

16  4286491, at *2 (E.D. La. Sept. 18, 2008). In addition to this power, "[a] court may, for

17  good cause, issue an order to protect a party or person from annoyance, embarrassment,

18  oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In this analysis, the

19  key criteria are not the relevance of the information sought, for its relevance is assumed,

20  the information being not otherwise discoverable.[15/] Rather, it is whether production of

21  the documents demanded would probably create a burden far greater than the probable

22  benefit, a matter of purely judicial discretion.

23       Even at first glance, it is clear that Plaintiffs' subpoena is written broadly. In

24  Plaintiffs' own words, they have sought "[a]ny and all DOCUMENTS" between

25

26  [15/] Thus, while the evidence may be relevant to show bias, the sheer scale of production requested may

27  seem to exceed that possibility. Though oft-obscured, relevance and discoverability, in the end, remain disparate notions subject to discrete consideration.

28

Defendant and Bausley exchanged "at any time" (Category Two), "[a]ny and all DOCUMENTS" Bausley received from Defendant, even if unsolicited, "at any time" (Category Four), and "[a]ny and all DOCUMENTS" from Bausley to Allstate "at any time" (Category Six). (Doc. No. 28 at 2.) In contrast, their ninth request specifically limits its request for "[a]ny and all DOCUMENTS showing the total amount of revenue" Bausley received from Allstate during a time period: "2008 to present." (<u>Id.</u>) The same temporal constraint is appended to the tenth request, which concerns itself with "[a]ny and all DOCUMENTS showing the total amount of work YOU have performed or been contracted to perform on behalf of ALLSTATE INSURANCE COMPANY." (<u>Id.</u> at 3.) The reason behind the time period's appearance in two categories and not in others is left unexplained, while Plaintiffs rest wholly on the relevance of the documents sought, not necessarily their pressing need, in the Reply. (<u>Id.</u> at 3, 5.)

For this Court, the sheer breadth of Plaintiffs' subpoena demands some curtailment. Categories Two, Four, and Six seemingly subject Bausley to an incredible burden, requiring him to produce every possible documentary record touching upon any aspect of his relationship with Allstate for all time. Instead of eternity, the addition of a reasonable range of years would have sharply reduced this request's onus, as would have some focus on fire-related claims rather than any and all claims for which Bausley was the appointed investigator. Concurrently, this Court cannot see the need for Plaintiffs to obtain "[a]ny and all DOCUMENTS showing the total amount of revenue" Bausley has earned from Allstate, as Category Nine commands. (<u>Id.</u> at 2.) Not only is such a request impossibly vague, but Plaintiffs' probable purposes would be far better served by a simple spreadsheet, with supporting documentation attached, enumerating the revenue earned by Defendant during the years of its relationship with Bausley. To wit, several categories of documents are so deliberately  broad, as Bausley less than eloquently maintains, (Doc. No. 29), as to necessarily subject Bausley to an undue burden or expense. Plaintiffs could have written them more narrowly, just as they circumscribed

Categories Nine and Ten, but instead asked for the world entire, invoking only relevance as their touchstone. In light of Rule 26(b)(2) and (c), however, the contents of an eternal universe is not theirs to claim at Bausley's (or Defendant's) expense by a mere conclusory assertion of discovery's minimal relevance measure. More was needed, but no more was proffered.

Accordingly, a narrowing of some of Plaintiffs' Categories seems essential.

## IV.  CONCLUSION

For the foregoing reasons, this Court DENIES the Objection IN PART and WITHOUT PREJUDICE. Bausley is ordered to provide "any and all DOCUMENTS" responsive to Categories One, Three, Five, and Seven. On its own motion, this Court limits the remaining classes of documents subpoenaed in the following manner.

1.  Categories Two, Four, and Six is hereby limited to documents related to Plaintiffs' specific insurance file and/or a fire-related investigation conduced by Bausley.

2.  Category Nine is limited solely to invoices documenting every payment received from Allstate and the total revenue earned from Allstate by Bausley for 2008 through the present, both in absolute terms and as a proportion of its total revenue.

3.  Category Ten is limited to any final reports and non-final memoranda showing the work performed by Bausley for Allstate from 2008 to the present.

IT IS SO ORDERED.

DATED:  July 15, 2015

Hon. William V. Gallo
U.S. Magistrate Judge